

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD G. GRANT, )
)
      Plaintiff, )
)
vs. ) No. 03 C 4999
)
KIMURA DENYOKI, LTD., a Japanese )
corporation, and KIMURA DENYOKI, )
INC., a California corporation, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Grant brought this strict product liability action against defendants Kimura Denyoki, Ltd., and Kimura Denyoki, Inc., alleging that defendants manufactured a defective machine that severed the tip of his right index finger in a workplace accident. Defendants have now moved for summary judgment, arguing that plaintiff assumed the risk of injury. For the following reasons, defendants' motion is denied.

## BACKGROUND

The following facts are taken from the parties' Rule 56 statements and plaintiff's deposition. Defendants have failed to respond to plaintiff's statement of additional facts, and they are therefore deemed to admit those facts.[1] Plaintiff's injury occurred on November 28, 2001, while he was working at F.I.C. America Corporation (F.I.C.). F.I.C. is located in Carol Stream, IL, and primarily manufactures metal parts used by the automobile industry. Plaintiff was hired by F.I.C. in August 2000, to work in maintenance, and in that capacity his

---

[1] *See* Local Rule 56.1(a) (stating that the opposing party's statement of additional facts "will be deemed admitted unless controverted by the statement of the moving party.").

job duties included repairing and programming robots, repairing and maintaining welding machines, general building maintenance, working on air compressors, and replacing components such as electrodes on machines. When he began at F.I.C. plaintiff had approximately 30 years experience in the electrical field.

On the day of the accident plaintiff's supervisor, Veronica Diaz, instructed him to replace electrodes on a spot welding machine. A spot welding machine welds nuts and bolts to steel automobile parts by using air, water, and electricity. The machine has a pair of electrodes, one positioned on top of the other, and each located on a set of jaws. To work the machine, an operator places a piece of metal between those jaws and then depresses a foot pedal (both hands are typically required to hold the metal steady), which causes the jaws to clamp down on a particular spot – hence the name, "spot welding machine." Over time and through use the electrodes wear out and must be replaced. Changing electrodes on these machines was a routine job for plaintiff, who said he had done so "thousands" of times at F.I.C. Plaintiff did not turn the machine off prior to replacing the electrodes, and asserted in his deposition that it was company policy not to turn off the machines for minor maintenance jobs such as replacing electrodes. Plaintiff removed and replaced the top electrode without incident. He then removed the bottom electrode, and as he was removing another component he accidentally touched the foot pedal with his foot and caused the jaws to clamp down on his right index finger, severing it at the second knuckle. Diaz was present during the accident.

Plaintiff alleges that the spot welding machine was defective and left defendants' control in an unreasonably dangerous condition. He focuses on several defects. First, he claims that the power to the machine could not be locked out due to defendants' failure to remove a piece of metal called a "knock-out," which prevented the use of the lockout lever.

Second, he asserts that the machine lacked warning labels cautioning users of the dangers of not locking out power. Third, he claims that the machine's design was defective because a single device, such as the foot pedal, caused the jaws to close, when it was economically feasible to add a sensor that would prevent the jaws from closing unless a piece of metal was placed between them. Plaintiff claims that without a sensor the machine has "zero fault tolerance," and with a sensor it would have "single fault tolerance." Plaintiff has supported these positions with the affidavit and report of his expert, Michael Studney.

Defendants move for summary judgment and contend that regardless of plaintiff's claims concerning the machine's alleged defects, plaintiff assumed the risk of injury and is barred from recovery. Defendants contend that plaintiff chose not to turn the machine off prior to replacing the electrodes, and that had the machine been off, the injury would not have occurred. Defendants emphasize that plaintiff stated he knew that he would be injured if his hand was between the jaws when they closed. Defendants further argue that plaintiff knew of the specific risk of injury due to the fact that he was aware that another F.I.C. employee, Greg,[2] was similarly injured by a spot welding machine. In response, plaintiff submits that he was instructed by a former supervisor never to turn off a spot welding machine prior to changing electrodes, and also that co-workers rarely shut down power to machines in order to perform minor maintenance. Plaintiff also argues that had there been a sensor, the jaws would not have shut on his finger even after he touched the foot pedal.

## DISCUSSION

Summary judgment is proper when the "pleadings, depositions, answers to

---

[2] Neither party has supplied Greg's last name.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). We do not make credibility determinations or weigh evidence when ruling on a summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Indeed, it is error to make credibility determinations at the summary-judgment stage. Morfin v. City of E. Chicago, 349 F.3d 989, 999 (7th Cir. 2003). Our only task is to "decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). We review the evidence in the light most favorable to plaintiff, the non-moving party. Payne v. Pauley, 337 F.3d 767, 770 (7th Cir 2003).

Assumption of risk is an affirmative defense in a products liability case. Cleveringa v. J.I. Case Co., 230 Ill. App. 3d 831, 595 N.E.2d 1193, 1208, 172 Ill. Dec. 523 (Ill. App. 1st Dist. 1992). And as an affirmative defense, the defendant carries the burden of proof. *Id.* To prove plaintiff assumed the risk of injury, defendant must show that plaintiff "voluntarily and unreasonably proceeded to encounter a known danger." Varilek v. Mitchell Eng'g Co., 200 Ill. App. 3d 649, 558 N.E.2d 365, 374, 146 Ill. Dec. 402 (Ill. App. 1st Dist. 1990). A plaintiff does not voluntarily assume a risk if a defendant "force[s] upon him a choice of courses of conduct, which leaves him no reasonable alternative to taking his chances." *Id.* Determining whether or not the assumption of risk defense applies "is a factual determination to be made by the jury." Cleveringa, 595 N.E.2d at 1208.

Defendants' summary judgment motion focuses on the assumption of risk defense, and not on plaintiff's case-in-chief. Defendants believe that plaintiff's case-in-chief is irrelevant to the present motion and urge the court to strike Studney's affidavit and report, which both

concern the alleged defects of the spot welding machine. Defendants' position misapprehends the legal standards that govern the assumption of risk defense in a products liability case. Under Varilek, the assumption of risk defense stems directly from plaintiff's allegations: "In a product liability case, whether the plaintiff assumed the risk of using the product must refer to using that aspect of the product that is alleged and proven to be unreasonably dangerous." 558 N.E.2d at 374; Cleveringa, 595 N.E.2d at 1208; Walsh v. Emergency One, 26 F.3d 1417, 1422 (7th Cir. 1994). Defendants cite that standard in their motion but then ignore it by failing to address plaintiff's allegations.

In Varilek, the plaintiff was an ironworker who fell from a roof after he slipped on metal panels manufactured by the defendant. The plaintiff alleged that the excessive amount of oil on those panels created an unreasonably dangerous condition. The defendant argued that the plaintiff assumed the risk of injury by attempting to balance his weight on a rod immediately before he fell. The court observed that the plaintiff did not assume the risk by stepping on the rods because his allegations focused on the unreasonably dangerous nature of the panels. Varilek, 558 N.E.2d 365 at 374. In Walsh, the plaintiff was a fireman who was injured when he fell from a moving fire truck manufactured by the defendant. The plaintiff alleged that the fire truck's product design was defective, and the defendant raised an assumption of the risk defense, pointing to plaintiff's failure to wear a seatbelt. After a jury verdict for the defendant, the plaintiff appealed, arguing that the trial court erroneously allowed evidence regarding his failure to wear a seatbelt. The court of appeals rejected the plaintiff's argument and held that the evidence was properly submitted to the jury because it related to the alleged defect. The court construed the rule set forth in Varilek and followed by Cleveringa to require a court "only to ask whether the risk assumed was the same risk as allegedly caused the injuries." Walsh, 26

F.3d at 1422. Thus, a defendant cannot raise an assumption of risk defense in a product liability case and ignore plaintiff's allegations concerning the defects and unreasonably dangerous nature of the product.

Plaintiff alleges that the spot welding machine was defective because it could not be locked out, lacked warning labels regarding the dangers of not locking it out, and because it lacked a sensor so that it had zero fault tolerance. Defendants claim that plaintiff assumed the risk when he tried to change the electrodes without shutting down the machine. The assumption of risk defense seems improper with respect to the allegations concerning the defective lockout mechanism. According to the spot welding machine's product specifications, a lock-out device is installed after the power is turned off (plf. response, fig. 1). The risk assumed (changing electrodes without shutting down the machine) does not refer to the alleged defect (inability to lockout), as the power could be shut down regardless of the application of a lockout device. However, plaintiff also claims that the machine was defective because it had zero fault tolerance, *i.e.*, tripping a single device such as the foot pedal would cause the jaws to close. Thus, the risk assumed refers directly to the alleged defect in that plaintiff attempted to change the electrodes while the power was on and he knew that the jaws would close if a single switch was tripped.

After finding that the assumption of risk defense adequately refers to the alleged zero fault tolerance defect, the next issue is whether defendants have shown that no issues of material fact exist. Defendants have not made that showing. The argument is relatively straightforward: plaintiff knew the risk of injury, he had the ability to avoid injury, he chose not to avoid the injury, and no jury could find him less than 100% responsible for his injury. Plaintiff does not dispute that he encountered a known danger, but he does argue that he did not encounter that danger voluntarily and unreasonably. Plaintiff asserted that he was instructed by a former

supervisor and other employees that the machines were not to be shut down prior to replacing electrodes. He stated that he had changed thousands of electrodes without ever shutting down the machines. Indeed, his supervisor, Diaz, stood by his side and made no protest when he proceeded to change the electrodes without turning off the machine. In his deposition plaintiff described that not shutting down machines at F.I.C. was a "company practice throughout the plant," and additionally stated, "You worked on [the machines] live. You didn't cut nothing off. Today you walk out there, state of practice, you could stand back and look and you'll see the same thing" (plf. dep. at 100). Under these circumstances a reasonable juror could find that it would have been unreasonable for plaintiff to shut down a machine prior to replacing an electrode.

The mere fact that plaintiff knew that he would suffer an injury if the jaws closed on his hand, and that he was also aware of "Greg's" injury, fails to establish that he voluntarily and unreasonably encountered a risk. Those facts must be viewed in context of the workplace realities, which Varilek emphasized were essential points of consideration when determining whether a plaintiff's course of conduct was voluntary and unreasonable. Varilek stressed that in situations "where the nature of plaintiff's employment requires exposure to certain hazards, it would be a *non sequitur* of the policy considerations of product liability law to say that the plaintiff voluntarily assumed such hazards by the mere acceptance or continuation of his job." 558 N.E.2d at 375. Further, the mere existence of the option to shut down the machine does not make plaintiff's decision to pursue an alternate course of conduct both voluntary and unreasonable. *Id.* The proper party to evaluate those workplace realities is the jury.[3]

---

[3]*See* RESTATEMENT (SECOND) OF TORTS § 496D, comment e:

Whether the plaintiff knows of the existence of the risk, or whether he understands and appreciates

In sum, there exist numerous factual determinations that must be made, most notably if defendant's machine was actually defective. The "same risk" standard from <u>Varilek</u> requires that the risk assumed relate to the aspect of the product that is "alleged and proven" to be unreasonably dangerous. Plaintiff has alleged, but has not yet proven that the spot welding machine was unreasonably dangerous. It is for the jury to determine if defendants' product was unreasonably dangerous and whether plaintiff's conduct was voluntary and unreasonable in light of all the evidence, rather than for the court to do so with only a limited glimpse of the evidence.

Defendants also appear to move to dismiss Kimura Denyoki, Inc. from this action by stating in their Rule 56 statement that it is an improper party on the grounds that it played no role in the distributive chain. Defendants do not cite to any materials in the record to support their contention, and further, plaintiff rejects their position. Kimura Denyoki, Inc. will remain a party to this action.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied.

_James B. Moran_
JAMES B. MORAN
Senior Judge, U. S. District Court

March 8, 2005.

---

its magnitude and its unreasonable character, is a question of fact, usually to be determined by the jury under proper instructions from the court. The court may itself determine the issue only where reasonable men could not differ as to the conclusion.